IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY

————————

**No. 6:20-cv-29-REW**

————————

**IN RE: AMERICORE HOLDINGS, LLC,** *et al.*

**COMMONWEALTH OF PENNSYLVANIA,**

**Appellant,**

**v.**

**AMERICORE HOLDINGS, LLC; AMERICORE HEALTH, LLC;
AMERICORE HEALTH ENTERPRISES, LLC; ELLWOOD MEDICAL
CENTER, LLC; ELLWOOD MEDICAL CENTER REAL ESTATE, LLC;
and ELLWOOD MEDICAL CENTER OPERATIONS, LLC,**

**Appellees.**

**U.S. BANKRUPTCY TRUSTEE**

————————

**BRIEF FOR APPELLANT**

————————

APPEAL FROM THE JUDGMENT OF THE UNITED STATES
BANKRUPTCY COURT FOR THE EASTERN DISTRICT OF KENTUCKY
ENTERED ON JANUARY 24, 2020

JOSH SHAPIRO
*Attorney General*

BY:  ANTHONY THOMAS KOVALCHICK
*Deputy Attorney General*

JASON L. SWARTLEY
*Chief Deputy Attorney General*
*Financial Enforcement Section*

J. BART DELONE
*Chief Deputy Attorney General*
*Appellate Litigation Section*

Office of Attorney General
1251 Waterfront Place
Pittsburgh, PA 15222
Phone: (412) 565-2543
akovalchick@attorneygeneral.gov

DATE: February 26, 2020

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................ ii

STATEMENT OF JURISDICTION ........................................................... 1

STATEMENT OF ISSUES AND THE APPLICABLE STANDARDS OF REVIEW ........................................................................................................ 2

CONCISE STATEMENT OF THE CASE ............................................... 4

SUMMARY OF ARGUMENT ................................................................. 11

ARGUMENT .............................................................................................. 13

    I.    The Commonwealth is NOT Required to Present "Evidence" of "Immediate Harm" ………………………………………………………...15

    II.    The Bankruptcy Court's Application of the "Public Policy" Test was *Categorically* Wrong …………………………………………………………18

    III.    The Bankruptcy Court's Decision Denying the Commonwealth's Alternative Request for Relief From the Automatic Stay Constituted a Reversible Abuse of Discretion …………………………………………………24

CONCLUSION …………………………………………………………..26

CERTIFICATE OF COMPLIANCE …………………………………….27

CERTIFICATE OF SERVICE …………………………………………...28

i

# TABLE OF AUTHORITIES

**Page**

*Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 40 (1991) ……………………………………………………………..13

*Bond v. United States*, 572 U.S. 844, 857 (2014) ………………………………...13

*California ex rel. Brown v. Villalobos*, 453 B.R. 404, 411 (D.Nev. 2011) …..16, 18

*Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 382, 389-390 (6th Cir. 2001) ……………………………………………………………………………..18-20, 22

*Colorado Public Utilities Commission v. Yellow Cab Cooperative Association (In re: Yellow Cab Cooperative Association)*, 200 B.R. 237, 240 (D.Colo. 1996) ……3

*Commonwealth by Kane v. New Foundations, Inc.*, 182 A.3d 1059, 1070 (Pa. Cmwlth. 2018) ……………………………………………………………………21

*Commonwealth ex rel. Corbett v. Citizens Alliance for Better Neighborhoods, Inc.*, 983 A.2d 1274, 1277 (Pa. Cmwlth. 2009) ………………………………………..21

*Commonwealth Oil Refining Co., Inc. v. U.S. Environmental Protection Agency (In the Matter of Commonwealth Oil Refining Co., Inc.)*, 805 F.2d 1175, 1184 (5th Cir. 1986) ………………………………………………………………………...15

*De Buono v. NYSA-ILA Medical & Clinical Services Fund*, 520 U.S. 806, 814 (1997) ………………………………………………………………………..16

*Dominic's Restaurant of Dayton, Inc. v. Mantia*, 683 F.3d 757, 761 (6th Cir. 2012) ………………………………………………………………………………….23

*Federal Energy Regulatory Commission v. FirstEnergy Solutions Corp. (In re: FirstEnergy Solutions Corp.)*, 945 F.3d 431, 447 (6th Cir. 2019) ………...13-14, 23

*Hagaman v. State of N.J., Dept. of Environmental Protection & Energy*, 151 B.R. 696, 699 (D.N.J. 1993) ………………………………………………………...16

*Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) …………………………………………………………………………..20

*Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 443-444 (1960) …21

*Innerwood & Co., LLC v. Privett (In re: Privett)*, 557 B.R. 580, 584 (S.D.Ohio 2016) ……………………………………………………………………………….3

*In re: Ballard*, 502 B.R. 311, 316 (Bankr.S.D.Ohio 2013) ………………………..9

*In re: Crockett*, 204 B.R. 705, 709 (Bankr.W.D.Tex. 1997) ……………………..16

*In re: Estate of Feinstein*, 527 A.2d 1034, 1036, n. 3 (Pa. Super. 1987) ………...21

*In re: Estate of Thompson*, 206 A.2d 21, 27 (Pa. 1965) ………………………….22

*In re: Interchemicals Co., Inc.*, 148 B.R. 263, 267 (Bankr.S.D.Tex. 1992) ……...16

*In re: Milton Hershey School Trust*, 807 A.2d 324, 330 (Pa. Cmwlth. 2002) …...22

*In re: Pruner's Estate*, 136 A.2d 107, 109 (Pa. 1957) …………………………...21

*Javens v. City of Hazel Park (In re: Javens)*, 107 F.3d 359, 363 (6th Cir. 1997) ...23

*Jacobson v. Massachusetts*, 197 U.S. 11, 24-25 (1905) …………………………16

*Kaye v. Agripool, SRL (In re: Murray)*, 392 B.R. 288, 296 (6th Cir. BAP 2008) ...25

*Kelo v. City of New London*, 545 U.S. 469, 485 (2005) …………………………19

*Law v. Siegel*, 571 U.S. 415, 421 (2014) ………………………………………20

*Mayor & City Council of Baltimore v. State of West Virginia (In re: Eagle-Picher Industries, Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002) ………………………………25

*McClafferty v. DeWine (In re: McClafferty)*, 571 B.R. 267, 277 (Bankr.N.D.Ohio 2017) ………………………………………………………………………………9

*McQuiggin v. Perkins*, 569 U.S. 383, 398, n. 3 (2013) …………………………..13

*Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267, 273 (3d Cir. 1984) ……………………………………………………………………...13

*Ritzen Group, Inc. v. Jackson Masonry, LLC*, 589 U.S. ___, ___, 2020 WL 201023, at *2 (2020) …......................................................................................1

*Sherlock v. Alling*, 93 U.S. 99, 103 (1876) ………………………………………21

*Spierer v. Federated Department Stores, Inc. (In re: Federated Department Stores, Inc.)*, 328 F.3d 829, 836 (6th Cir. 2003) …………………………………......24-25

*Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941, 956 (1982) ……………….17

*State Bank of Florence v. Miller (In re: Miller)*, 459 B.R. 657, 662 (6th Cir. BAP 2011) ……………………………………………………………………………….3

*Trump v. Hawaii*, 138 S.Ct. 2392, 2428 (2018) (Thomas, J., concurring) ……….19

*United States v. Commonwealth Companies, Inc. (In re: Commonwealth Companies, Inc.)*, 913 F.2d 518, 522 (8th Cir. 1990) ……………………………..15

*United States v. Robinson (In re: Robinson)*, 764 F.3d 554, 559 (6th Cir. 2014) ...20

*Volvo Commercial Finance LLC the Americas v. Gasel Transportation Lines, Inc. (In re: Gasel Transportation Lines, Inc.)*, 326 B.R. 683, 685 (6th Cir. BAP 2005) ……………………………………………………………………………….25

*Walters v. UPMC Shadyside Presbyterian Shadyside*, 187 A.3d 214, 239 (Pa. 2018) ……………………………………………………………………………...19

*Word v. Commerce Oil Co. (In re: Commerce Oil Co.)*, 847 F.2d 291, 295 (6th Cir. 1988) ……………………………………………………………………...14, 16, 19

11 U.S.C. § 362(a) ………………………………………………………………….9

11 U.S.C. § 362(b)(4) ………………………………………10-11, 13, 15-16, 18, 20, 25

11 U.S.C. § 362(d) ………………………………………………………………..10

11 U.S.C. § 362(d)(1) ………………………………………………………………26

28 U.S.C. § 157(a) ……………………………………………………………………1

28 U.S.C. § 158(a)(1) ……………………………………………………………...1

28 U.S.C. § 1334 …………………………………………………………………...1

15 Pa. C.S. § 5547(b) ……………………………………………………………5

15 Pa. C.S. § 5976(b) ……………………………………………………………5

35 P.S. §§ 448.101 *et seq.* ……………………………………………………6

35 P.S. § 448.806 ………………………………………………………………..6

35 P.S. § 448.808 …………………………………………………………6-7

71 P.S. §§ 732-101 *et seq.* …………………………………………………2, 5

71 P.S. § 732-204(c) …………………………………………………………5

## STATEMENT OF JURISDICTION

The Bankruptcy Court's jurisdiction in this case was predicated on 28 U.S.C. §§ 157(a) and 1334.  In this bankruptcy appeal, this Court has jurisdiction to review the Bankruptcy Court's order pursuant to 28 U.S.C. § 158(a)(1).  On January 24, 2020, the Bankruptcy Court denied the Commonwealth of Pennsylvania's motion for a determination that the automatic stay did not apply to its enforcement action in the Court of Common Pleas of Lawrence County, or for the entry of an order granting the Commonwealth relief from the automatic stay. ECF No. 143.[1]  Since the Bankruptcy Court's "adjudication" of the Commonwealth's motion constituted "a discrete procedural unit within the embracive bankruptcy case[,]" it is subject to immediate appeal.  *Ritzen Group, Inc. v. Jackson Masonry, LLC*, 589 U.S. ___, ___, 2020 WL 201023, at *2 (2020).

---

[1] The appendix filed with this brief includes a listing of "the relevant entries in the bankruptcy docket[.]"  FED. R. BANKR. P. 8018(b)(1)(A).  The "ECF" citations contained in this brief refer directly to documents that were filed in the Bankruptcy Court and remain accessible on its electronic docket.

1

## STATEMENT OF ISSUES AND THE APPLICABLE STANDARDS OF REVIEW

1.      Did the Bankruptcy Court err in determining that the Commonwealth's enforcement action did not fall within the purview of its "police and regulatory power" because of its failure to present "evidence" of "immediate harm" to its citizens, even though federal courts throughout the United States have declared that such a power may be lawfully exercised even when no harm to a State's citizens is imminent?

2.      Did the Bankruptcy Court err in determining that the Commonwealth's enforcement action, which was commenced by the Attorney General under the Commonwealth Attorneys Act [71 P.S. §§ 732-101 *et seq.*] in accordance with his *parens patriae* powers, constituted a "request to adjudicate the private rights of [its] citizens," even though the action was clearly commenced for the undeniably "public" purposes of reopening a licensed medical facility, ensuring the availability of medical services to the residents of Lawrence County, and preventing the unlawful diversion of charitable assets to private parties?

3.      Did the Bankruptcy Court commit reversible error in basing its decision denying the Commonwealth's alternative motion for relief from the automatic stay on the application of an erroneous legal standard?

2

In this appeal, the Bankruptcy Court's "conclusions of law" must be reviewed *de novo*. *Innerwood & Co., LLC v. Privett (In re: Privett)*, 557 B.R. 580, 584 (S.D.Ohio 2016). Since the application of 11 U.S.C. § 362(b)(4)'s exception to the automatic stay presents a pure question of law, the Bankruptcy Court's decision relating to the applicability of that exception is subject to *de novo* review in this Court. *Colorado Public Utilities Commission v. Yellow Cab Cooperative Association (In re: Yellow Cab Cooperative Association)*, 200 B.R. 237, 240 (D.Colo. 1996). The Bankruptcy Court's decision denying the Commonwealth's alternative motion for relief from the automatic stay may be reviewed for an abuse of discretion. *State Bank of Florence v. Miller (In re: Miller)*, 459 B.R. 657, 662 (6th Cir. BAP 2011).

## CONCISE STATEMENT OF THE CASE

Ellwood City Hospital ("ECH") is a nonprofit corporation formed under the laws of Pennsylvania. ECF No. 84-1 at 40. It is located in Lawrence County, Pennsylvania. ECF No. 84 at ¶ 10. ECH began its operations as a hospital in 1910. *Ibid.* Throughout its history, ECH has expanded the reach of its services because of charitable contributions made by residents of the surrounding communities. *Id.* at ¶ 12.

Prior to 2017, ECH began to lose more than four million dollars per year. ECF No. 84-1 at 19-20. On March 6, 2017, ECH entered into an asset purchase agreement ("APA") and an amended escrow agreement with Americore Health, LLC ("Americore"), and Ellwood Medical Center, LLC ("EMC"). ECF No. 84-1 at 40. The agreement called for the transfer of ECH's charitable assets to Americore and EMC, which were for-profit corporations. Those charitable assets included ECH's real estate, equipment, and receivables. ECF No. 84-1 at 18. Although the terms of the APA did not provide for the payment of money to ECH, Americore and EMC assumed all liabilities for ECH's "Employees Defined Pension Plan" and agreed to pay some of its financial obligations. ECF No. 84-1 at 19. The APA also required Americore and EMC to operate ECH's facility as a licensed hospital and emergency room for the next ten years. ECF No. 84-1 at 19. The facility was required to remain open at all times. ECF No. 84-1 at 19.

4

Under 15 Pa. C.S. § 5547(b), "[p]roperty committed to charitable purposes" may not "be diverted from the objects to which it was donated, granted or devised" "until the board of directors or other body obtains" a court order "specifying the disposition of the property." A nonprofit corporation that has elected to "wind up and settle" its affairs under 15 Pa. C.S. § 5975 must similarly "apply to the court for an order" pursuant to § 5547(b) "[i]f the assets of the corporation include any property committed to charitable purposes[.]" 15 Pa. C.S. § 5976(b).

ECH petitioned the Court of Common Pleas of Lawrence County, Orphans' Court Division, on June 26, 2017, seeking judicial approval of the sale and transfer contemplated by the APA. ECF No. 84-1 at 18. The Commonwealth Attorneys Act [71 P.S. §§ 732-101 *et seq.*] authorizes the Attorney General to intervene in any action "involving charitable bequests and trusts" in order to ensure that charitable assets remain dedicated to their intended purpose. 71 P.S. § 732-204(c). The Attorney General participated in the proceedings conducted before the Orphans' Court.

The Orphans' Court determined that the proposed transfer would constitute "a diversion of a charitable organization's assets" unless Americore and EMC fully funded and satisfied the "Defined Benefit Plan" and kept the facility operating as a licensed hospital "with a fully licensed emergency room" in accordance with the statutory provisions existing under Pennsylvania law and the regulations

5

promulgated by the Pennsylvania Department of Health ("DOH").  ECF No. 84-1

at 24.  It was specifically noted that the Attorney General's Office would "maintain

standing to sue for monetary damages and to enforce" the provisions of the APA

and the escrow agreement, along with certain modifications that had been adopted

by the Orphans' Court.  ECF No. 84-1 at 25.  With that understanding, the

Orphans' Court approved the transfer.

Section 12.6 of the APA created a Local Advisory Board.  ECF No. 84 at 11,

¶ 52.  Under Section 12.5 of the APA, Americore and EMC needed the approval of

the Board to reduce the services that the facility was otherwise required to provide.

ECF No. 84 at 11, ¶ 52.  Mayor Anthony J. Court and Lieutenant David Kingston,

who headed the Ellwood City Police Department, were both appointed to serve on

the Board.  ECF No. 84-8 at 2, ¶¶ 5-6; ECF No. 84-9 at 2, ¶ 5.  The Board's first

organizational meeting was conducted on November 29, 2017.  ECF No. 84-9 at 3,

¶ 7.  A second meeting was held in December 2018.  ECF No. 84-9 at 3, ¶ 8.  From

that point forward, no further Board meetings were conducted.  ECF No. 84-9 at 3,

¶ 9.

Pennsylvania's Health Care Facilities Act [35 P.S. §§ 448.101 *et seq.*]

authorizes the DOH to license hospitals and other health care facilities operating in

the Commonwealth.  35 P.S. § 448.806.  A facility must satisfy the DOH's

statutory and regulatory requirements to maintain its operating license.  35 P.S. §

448.808.  After the implementation of the APA, the ECH facility was cited more than forty times for failing to satisfy its statutory and regulatory obligations.  ECF No. 84-11 at 4, ¶ 19.  On November 25, 2019, ECH's employees received only $550.00 each in wages, regardless of the specific amounts that they were owed.  ECF No. 84 at 14, ¶ 63.

The DOH inspected the ECH facility on November 27, 2019.  ECF No. 84-11 at 8, ¶ 40.  As a result of the inspection, the DOH imposed a ban on inpatient admissions and suspended the facility's emergency services.  ECF No. 84-11 at 8, ¶ 40.  Nonetheless, the DOH did not revoke the facility's operating license.  ECF No. 84-11 at 9, ¶ 49.

On December 6, 2019, ECH's employees did not receive their paychecks.  ECF No. 84 at 14, ¶ 65.  That same day, Americore furloughed 89 of ECH's 171 employees.  ECF No. 84 at 14, ¶ 66.  Less than a week later, an additional 57 ECH employees were furloughed.  ECF No. 84 at 14, ¶ 66.  Americore voluntarily stopped operating the ECH facility on December 10, 2019.  ECF No. 84-8 at 4, ¶ 22.  The cessation of the facility's operations constituted a clear violation of the APA and the order that had been entered by the Orphans' Court on September 22, 2017.  ECF No. 84-1 at 24-25.

On December 23, 2019, the Commonwealth filed a petition to enforce the APA in the Orphans' Court.  ECF No. 84-1 at 2-15.  The named defendants

7

included Americore, Americore Health Solutions, LLC, Ellwood City Medical

Center Operations, LLC, Ellwood City Medical Center, LLC, and Grant White,

who served as the Chief Executive Officer of Americore and the President and

owner of Americore Health Solutions, LLC.  ECF No. 84-1 at 2.  In its petition, the

Commonwealth alleged that Americore and its affiliates had violated the APA, the

Orphans' Court's earlier order, and various statutory and regulatory provisions

requiring the timely payment of wages and pension contributions.  ECF No. 84-1 at

11-14.

The Commonwealth's petition contained several requests for declaratory and

injunctive relief.  The petition requested that the Orphans' Court declare the

defendants' conduct to be in violation of the APA and the statutory provisions

prohibiting the unlawful diversion of charitable assets.  ECF No. 84-1 at 14.  The

Commonwealth asked the Orphans' Court to enjoin the defendants from

committing similar violations in the future, and to affirmatively order the

defendants to operate the ECH facility in compliance with all applicable licensing

requirements.  ECF No. 84-1 at 14.  In the event that the ECH facility was not

reopened and brought into compliance with the requirements of Pennsylvania law,

the Commonwealth asked the Court to enter an order divesting the defendants of

their "legal and equitable ownership rights" in the facility.  ECF No. 84-1 at 14.

The petition also included a request that the defendants be ordered to pay all

8

outstanding wages to unpaid employees, remit payment of all overdue

unemployment compensation taxes, and make all outstanding pension

contributions.[2]   ECF No. 84-1 at 14.   Finally, the Commonwealth sought the entry

of an order compelling the defendants to provide an accounting of their financial

expenditures and directing that they pay the investigative and litigation costs

incurred by the Attorney General in connection with the proceeding.   ECF No. 84-

1 at 15.

On December 31, 2019, Americore filed a petition under Chapter 11 of the

Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of

Kentucky.   ECF No. 1.   The filing of the bankruptcy petition vested the

Bankruptcy Court with jurisdiction to determine whether the enforcement action

pending in Lawrence County was automatically stayed by the operation of 11

U.S.C. § 362(a).   *In re: Ballard*, 502 B.R. 311, 316 (Bankr.S.D.Ohio 2013).   Some

of Americore's affiliates filed parallel petitions under Chapter 11.   The Bankruptcy

---

[2] The exception to the automatic stay codified at 11 U.S.C. § 362(b)(4) does
not necessarily permit the "enforcement" of a "money judgment."   *McClafferty v.
DeWine (In re: McClafferty)*, 571 B.R. 267, 277 (Bankr.N.D.Ohio 2017).   During a
hearing conducted before the Bankruptcy Court on January 17, 2020, the
Commonwealth acknowledged that its petition in the Orphans' Court may need to
be amended to exclude certain requests for monetary relief.   Transcript of Oral
Argument at 9-10.

Court subsequently granted a motion requesting that the associated cases be jointly administered.  ECF No. 62.

The Commonwealth filed two motions on January 14, 2020.  In its first motion, the Commonwealth sought a determination that the enforcement action pending in Lawrence County constituted an exercise of its "police and regulatory power," thereby placing it within the statutory exception to the automatic stay codified at 11 U.S.C. § 362(b)(4).  ECF No. 84.  In the alternative, the Commonwealth requested the entry of an order granting it relief from the automatic stay pursuant to 11 U.S.C. § 362(d).  ECF No. 84.  The Commonwealth's second motion requested the payment of prepetition wages, salaries, and related items.  ECF No. 85.  On January 17, 2020, the Bankruptcy Court conducted expedited hearings on both motions.  ECF Nos. 119-120.  Four days later, the Bankruptcy Court overruled the Commonwealth's motion to provide for the payment of prepetition wages, salaries, and related items.  ECF No. 132.

In an order dated January 24, 2020, the Bankruptcy Court overruled the Commonwealth's motion requesting a determination that the action in Lawrence County could proceed under § 362(b)(4).  ECF No. 143 at 1-3.  The Commonwealth's alternative motion for relief from the automatic stay was also denied.  ECF No. 143 at 3.  On February 3, 2020, the Commonwealth filed a timely notice of appeal.  ECF No. 161.

10

## SUMMARY OF ARGUMENT

The Commonwealth's enforcement action in Lawrence County is plainly designed to facilitate the reopening of the ECH facility for the benefit of those living in the surrounding communities. The "police and regulatory power" of a State includes the authority to safeguard the health and safety of its citizens. A State may exercise its "police powers" *before* harm to its citizens becomes imminent. Courts throughout the United States have consistently held that § 362(b)(4)'s exception to the automatic stay sweeps broadly enough to encompass enforcement actions that are *not* immediately necessary to protect a State's inhabitants.

Contrary to the applicable legal standard, the Bankruptcy Court concluded that the relief sought by the Commonwealth in Lawrence County was "pecuniary in nature[,]" and that it was not designed to address "a matter of public safety[,]" merely because the record did not contain "evidence" suggesting that "immediate harm" was likely to "befall the residents" of Ellwood City. ECF No. 143 at 2. In making that determination, the Bankruptcy Court incorrectly required the Commonwealth to produce evidence that it was never required to produce in the first place. Because the words found in § 362(b)(4) (and the judicial decisions interpreting those words) provide no basis for placing such an evidentiary burden

11

on the Commonwealth, the Bankruptcy Court's decision should be summarily and promptly reversed.

The Bankruptcy Court also committed a clear error of law by characterizing the Commonwealth's enforcement action as an attempt to "adjudicate the private rights of the citizens of Lawrence County[.]"  ECF No. 143 at 3.  Any collective rights held by "the citizens" are, by definition, "public" rather than "private."  For many years, Pennsylvania courts have consistently recognized that, when the Attorney General acts to prevent the unlawful diversion of charitable assets to a non-charitable purpose, he represents the interests of the general "public" rather than purely "private" interests asserted by specific individuals.  The Commonwealth's enforcement action is obviously designed to restore the delivery of health care services from the ECH facility for the benefit of all Ellwood City residents (and all other individuals who happen to experience medical emergencies while visiting Ellwood City).  That action cannot be reasonably characterized as an attempt to vindicate the "private rights" of certain creditors.  Because the Bankruptcy Court's decision was premised on such clear errors of law, it cannot be permitted to stand.

# ARGUMENT

"Congress legislates against the backdrop of existing law." *McQuiggin v. Perkins*, 569 U.S. 383, 398, n. 3 (2013).  Like language appearing in any other federal statute addressing the appropriate balance between state and federal power, the phrase "police and regulatory power" appearing in 11 U.S.C. § 362(b)(4) must be construed in accordance with "certain unexpressed presumptions." *Bond v. United States*, 572 U.S. 844, 857 (2014).  Those presumptions dictate that the statutory exception to the automatic stay "be construed broadly," that "no unnatural efforts be made to limit its scope[,]" and that it be "read in favor of the States" whenever possible.  *Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267, 273 (3d Cir. 1984).  When these central tenets of statutory construction are applied in this case, it becomes clear that the Bankruptcy Court's decision "conflicts with the broad discretion" that Congress has left to the States and is "inconsistent with the limited authority [that] Congress has vested in bankruptcy courts." *Board of Governors of the Federal Reserve System v. MCorp Financial, Inc.*, 502 U.S. 32, 40 (1991).

The United States Court of Appeals for the Sixth Circuit applies the "pecuniary purpose" test and the "public policy" test to determine whether a State's action falls within § 362(b)(4)'s purview.  *Federal Energy Regulatory Commission v. FirstEnergy Solutions Corp. (In re: FirstEnergy Solutions Corp.)*,

945 F.3d 431, 447 (6th Cir. 2019).  "Under the pecuniary purpose test, reviewing

courts focus on whether the governmental proceeding relates primarily to the

protection of the government's pecuniary interest in the debtor's property, and not

to matters of public safety.  Those proceedings which relate primarily to matters of

public safety are excepted from the stay.  Under the public policy test, reviewing

courts must distinguish between proceedings that adjudicate private rights and

those that effectuate public policy.  Those proceedings that effectuate a public

policy are excepted from the stay." *Word v. Commerce Oil Co. (In re: Commerce*

*Oil Co.)*, 847 F.2d 291, 295 (6th Cir. 1988).

The Bankruptcy Court correctly characterized the Commonwealth's action

in Lawrence County as an attempt "to enforce the court-approved sale by ordering

the Debtors to operate the hospital according to the terms of the sale or divest the

Debtors of all legal or equitable ownership rights in the hospital."  ECF No. 143 at

1.  From that point forward, however, the Bankruptcy Court's analysis was

fundamentally flawed.  The Commonwealth does not own the assets that are at

issue in this case.  ECF No. 84 at 23.  Since the Commonwealth has no "pecuniary

interest" in this case *at all*, the "pecuniary purpose" test does not apply.

*FirstEnergy Solutions Corp.*, 945 F.3d at 447.  In any event, the Commonwealth's

motion should have been easily granted under *either* the "pecuniary purpose" test

*or* the "public policy" test.

14

## I.      The Commonwealth is NOT Required to Present "Evidence" of "Immediate Harm"

Purporting to apply the "pecuniary purpose" test, the Bankruptcy Court stated that the Commonwealth's action was not designed to ensure the "public safety" of Lawrence County's residents because the hospital had already closed, and because the record contained "no evidence that immediate harm may befall the residents at this time."  ECF No. 143 at 2.  To the extent that the Bankruptcy Court believed that the Commonwealth could exercise its "police and regulatory power" only to prevent "immediate harm" to the residents of Lawrence County, it was obviously mistaken.  A State is not required to wait for an emergency to develop before it exercises its "police" and "regulatory" powers.

The language of § 362(b)(4) "does not limit the exercise of police or regulatory powers to instances where there can be shown imminent and identifiable harm or urgent public necessity."  *Commonwealth Oil Refining Co., Inc. v. U.S. Environmental Protection Agency (In the Matter of Commonwealth Oil Refining Co., Inc.)*, 805 F.2d 1175, 1184 (5th Cir. 1986).  The Bankruptcy Court erred in determining that § 362(b)(4)'s exception to the automatic stay "encompasses only governmental actions to prevent or stop an imminent or ongoing harm to the public."  *United States v. Commonwealth Companies, Inc. (In re: Commonwealth Companies, Inc.)*, 913 F.2d 518, 522 (8th Cir. 1990) (describing and rejecting an argument raised by Chapter 11 debtors).  The reasoning behind the Bankruptcy

15

Court's decision in this case has been consistently rejected by courts throughout the United States. *California ex rel. Brown v. Villalobos*, 453 B.R. 404, 411 (D.Nev. 2011); *In re: Crockett*, 204 B.R. 705, 709 (Bankr.W.D.Tex. 1997); *Hagaman v. State of N.J., Dept. of Environmental Protection & Energy*, 151 B.R. 696, 699 (D.N.J. 1993). In order to demonstrate that its action falls within the broad purview of § 362(b)(4), the Commonwealth is simply *not* required to make "a showing of imminent and specific public harm." *In re: Interchemicals Co., Inc.*, 148 B.R. 263, 267 (Bankr.S.D.Tex. 1992).

For over a century, the "police power" of a State has been understood to include a very *broad* authority to take certain actions to protect the health of its citizens. *Jacobson v. Massachusetts*, 197 U.S. 11, 24-25 (1905). "[T]he historic police powers of the State [also] include the *regulation* of matters of health and safety." *De Buono v. NYSA-ILA Medical & Clinical Services Fund*, 520 U.S. 806, 814 (1997) (emphasis added). When these principles are properly applied in this case, it becomes clear that the Commonwealth's attempt to reopen the hospital "relates primarily" to "matters of public safety." *Word*, 847 F.2d at 295.

In a declaration executed on January 14, 2020, Ellwood City Mayor Anthony J. Court stated that the closing of the ECH facility had adversely affected "all Ellwood City community members." ECF No. 84-8 at 4, ¶ 22. He explained that the residents of Ellwood City are now forced to drive thirty minutes in order to

16

procure "emergency room and inpatient services[,]" thereby creating difficulties for the city's "many elderly residents" who had previously been able to receive care at the ECH facility. ECF No. 84-8 at 4, ¶ 23. Lieutenant David Kingston, who heads the Ellwood City Police Department, declared that police officers were being forced to spend more time traveling to and from medical centers, and that "additional manpower" was needed to protect the residents of Ellwood City because of the facility's closure. ECF No. 84-9 at 3, ¶¶ 17-18. He stated that the "additional burdens" caused by the absence of a local medical facility had been "acutely felt" by the residents of Ellwood City, and that "there may be an inadequate number of police officers to service the community" as a result of the closure and concomitant need for associated travel. ECF No. 84-9 at 4, ¶ 19.

The undisputed evidence presented by the Commonwealth clearly demonstrates that the closure of the ECH facility created a shortage of medical services in Ellwood City. Contrary to the Bankruptcy Court's flawed analysis, the Commonwealth's attempt to reopen the facility through its action in Lawrence County is not driven by a "pecuniary" purpose. ECF No. 143 at 2. "[A] State's power to regulate the use of [medical services] in times and places of shortage for the purpose of protecting the health of its citizens—and not simply the health of its economy—is at the core of its police power." *Sporhase v. Nebraska ex rel. Douglas*, 458 U.S. 941, 956 (1982). The Commonwealth need not wait for an

17

emergency to develop to exercise that power for the benefit of citizens who need access to medical services. *Villalobos*, 453 B.R. at 411. Since the Bankruptcy Court incorrectly asserted that the Commonwealth was required to present "evidence that *immediate* harm may befall the residents [of Ellwood City] *at this time*" in order to demonstrate that its action fell within the ambit of § 362(b)(4), the Bankruptcy Court's decision should be summarily reversed. ECF No. 143 at 2 (emphasis added).

## II.    The Bankruptcy Court's Application of the "Public Policy" Test was *Categorically* Wrong

The Commonwealth's enforcement action in Lawrence County, which seeks to protect the collective rights of "the citizens," is undoubtedly designed to further the "public policy" of Pennsylvania. Under the "public policy" test, § 362(b)(4)'s exception to the automatic stay is not broad enough to include an "enforcement action" that is brought "primarily to assert and protect the private rights of *certain individuals*." *Chao v. Hospital Staffing Services, Inc.*, 270 F.3d 374, 382 (6th Cir. 2001) (emphasis added). In this case, the Bankruptcy Court failed to recognize the distinction between "certain individuals" and "the citizens of Lawrence County." That mistake illustrates precisely why the Commonwealth's enforcement action constitutes an exercise of its "police" and "regulatory" powers.

"The existence of the public policy test naturally presumes that some suits by governmental units, even though they would effectuate certain declared public

policies, will nevertheless be regarded as largely in furtherance of private interests." *Chao*, 270 F.3d at 389. The very purpose of the "public policy" test is to "*distinguish* between proceedings that adjudicate private rights and those that effectuate public policy." *Word*, 847 F.2d at 295 (emphasis added). The Bankruptcy Court's flawed reasoning essentially *equated* the two.

In its order, the Bankruptcy Court characterized the enforcement action as "a request to adjudicate the *private rights* of *the citizens* of Lawrence County[.]" ECF No. 143 at 3. That legal conclusion directly contradicts itself. "[R]ights held by the community at large" are, by definition, "public" rather than "private." *Trump v. Hawaii*, 138 S.Ct. 2392, 2428 (2018) (Thomas, J., concurring). The enforcement action is not designed to further private interests. Instead, its unquestioned objective is to protect the Commonwealth's "*public interest* in ensuring that there are adequate health care providers in all beneficial forms to provide efficient, affordable care" to the residents of Ellwood City. *Walters v. UPMC Shadyside Presbyterian Shadyside*, 187 A.3d 214, 239 (Pa. 2018) (emphasis added).

"[T]he government's pursuit of a public purpose will often benefit individual private parties." *Kelo v. City of New London*, 545 U.S. 469, 485 (2005). If the Commonwealth succeeds in reopening the ECH facility, the specific individuals who receive treatment at that facility will benefit from the Commonwealth's

19

pursuit of its undeniably public purpose.  That result, however, does not deprive the Commonwealth's enforcement action of its "regulatory" character.  "When an action furthers both public and private interests and the private interests do not significantly outweigh the public benefit from enforcement, courts should defer to the legislature's decision to vest enforcement authority in the executive and recognize such actions as [being] within 'such governmental unit's police and regulatory power,' as that term is used in § 362(b)(4)."  *Chao*, 270 F.3d at 390.

"If the statute's language is transparent, 'the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'"  *United States v. Robinson (In re: Robinson)*, 764 F.3d 554, 559 (6th Cir. 2014), quoting *Hartford Underwriters Insurance Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000) (internal quotation marks omitted).  The United States Supreme Court has long recognized that a bankruptcy court's equitable powers can only be exercised within the confines of the Bankruptcy Code.  *Law v. Siegel*, 571 U.S. 415, 421 (2014).  The language of § 362(b)(4) contains no suggestion that a State's exercise of its "police or regulatory power" magically becomes subject to the automatic stay merely because its citizens may ultimately receive some benefits at the expense of a debtor's creditors.  11 U.S.C. § 362(b)(4).  The very existence of § 362(b)(4) confirms that the Bankruptcy Code was "never intended to cut the States off from legislating on all subjects relating to

the health, life, and safety of their citizens [simply because] the legislation might indirectly affect the commerce of the country." *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 443-444 (1960), quoting *Sherlock v. Alling*, 93 U.S. 99, 103 (1876).

"Because charities serve an indefinite number of people," the Attorney General must facilitate the "public supervision" of all charities operating in Pennsylvania. *Commonwealth by Kane v. New Foundations, Inc.*, 182 A.3d 1059, 1070 (Pa. Cmwlth. 2018). When the Attorney General exercises the Commonwealth's *parens patriae* powers, "[he] represents a broader interest than that of the charity" at issue. *In re: Estate of Feinstein*, 527 A.2d 1034, 1036, n. 3 (Pa. Super. 1987). Since "private parties have insufficient financial interest in charitable trusts to oversee their enforcement[,]" the Commonwealth must affirmatively and independently ensure that "the general *public*" continues to reap "the social and economic advantages" of such trusts. *In re: Pruner's Estate*, 136 A.2d 107, 109 (Pa. 1957) (emphasis added). The enforcement action is clearly designed to vindicate only the "interests that the Commonwealth has in the well-being of its populace." *Commonwealth ex rel. Corbett v. Citizens Alliance for Better Neighborhoods, Inc.*, 983 A.2d 1274, 1277 (Pa. Cmwlth. 2009).

In its order of September 22, 2017, the Orphans' Court declared that the transfer described in the APA would constitute an unlawful "diversion of a

charitable organization's assets" unless Americore fulfilled its obligation to keep the ECH facility operating in compliance with all statutory, regulatory and licensing requirements existing under Pennsylvania law and administered by the DOH. ECF No. 84-1 at 24. When Americore stopped operating the facility on December 10, 2019, the impermissible "diversion" contemplated by the Orphans' Court actually took place. Under Pennsylvania law, property donated for a charitable purpose constitutes a form of "public property." *In re: Milton Hershey School Trust*, 807 A.2d 324, 330 (Pa. Cmwlth. 2002). In the Orphans' Court, the Commonwealth is clearly acting to ensure that all charitable assets donated to facilitate the perpetual operation of the ECH facility remain dedicated to the unquestionably "public" purpose of ensuring access to quality health care for *all* individuals, including other Americore creditors who may happen to experience a medical emergency while visiting Ellwood City. Despite the Bankruptcy Court's incorrect characterization of the enforcement action as "a request to adjudicate the private rights of the citizens of Lawrence County[,]" the Commonwealth is actually seeking to vindicate "the public interest in a charitable trust rather than [private interests held by] a particular class of beneficiaries[.]" *In re: Estate of Thompson*, 206 A.2d 21, 27 (Pa. 1965).

Although "many cases" implicating the "public policy" test "will be close[,]" *this one* is not. *Chao*, 270 F.3d at 389. The Commonwealth's

22

enforcement action in Lawrence County, which was instituted pursuant to the

*parens patriae* authority vested in the Attorney General under Pennsylvania law,

seeks the entry of an order directing Americore to operate the ECH facility in

compliance with the applicable statutory, regulatory and contractual requirements.

ECF No. 84-1 at 14.  Americore's failure to do so already contravenes an existing

court order.  ECF No. 84-1 at 18-30.  The Bankruptcy Code does not provide a

shelter for those who knowingly violate orders entered by state courts.  *Dominic's*

*Restaurant of Dayton, Inc. v. Mantia*, 683 F.3d 757, 761 (6th Cir. 2012).

This is not a situation in which the advancement of a public interest is

merely "incidental" to an attempt by the Commonwealth to adjudicate the private

rights of specific individuals.  *FirstEnergy Solutions Corp.*, 945 F.3d at 447.  In

this case, the reopening of the hospital pursuant to the Commonwealth's

unquestioned "police power" is the very *purpose* of the enforcement action.  ECF

No. 84-1 at 14.  The operation of § 362(b)(4) easily enables the enforcement action

to "penetrate the barrier" that the automatic stay places between civil actions

brought by other parties and the estate being administered by the Bankruptcy

Court.  *Javens v. City of Hazel Park (In re: Javens)*, 107 F.3d 359, 363 (6th Cir.

1997).

### III.   The Bankruptcy Court's Decision Denying the Commonwealth's Alternative Request for Relief From the Automatic Stay Constituted a Reversible Abuse of Discretion

Even when the automatic stay does apply, a bankruptcy court may grant a party in interest "relief from the stay" "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]"  11 U.S.C. § 362(d)(1).  While addressing "the risk of misuse of charitable assets" in its order, the Bankruptcy Court stated that the Commonwealth was required to establish more than "a mere fear that a debtor could misuse the assets" in order to procure the entry of an order granting relief from the automatic stay.  ECF No. 143 at 3. Under Pennsylvania law, however, Americore improperly "misused" charitable assets as soon as it stopped operating the ECH facility in accordance with the terms of the APA and the Orphans' Court's preexisting order.  In its order, the Orphans' Court specifically declared that the "proposed transfer of assets" would *itself* constitute an impermissible "diversion of assets" if it did not advance ECH's "charitable purpose" of continuing "hospital operations for the people of Ellwood City."  ECF No. 84-1 at 27.  Contrary to the Bankruptcy Court's conclusion, the feared "misuse" of charitable assets has already begun.

A bankruptcy court's order denying a party's motion for relief from the automatic stay may be reviewed for an abuse of discretion.  *Spierer v. Federated Department Stores, Inc. (In re: Federated Department Stores, Inc.)*, 328 F.3d 829,

836 (6th Cir. 2003).  An abuse of discretion occurs when a bankruptcy court "improperly applies the law or uses an erroneous legal standard."  *Kaye v. Agripool, SRL (In re: Murray)*, 392 B.R. 288, 296 (6th Cir. BAP 2008), quoting *Volvo Commercial Finance LLC the Americas v. Gasel Transportation Lines, Inc. (In re: Gasel Transportation Lines, Inc.)*, 326 B.R. 683, 685 (6th Cir. BAP 2005). In this particular case, the Bankruptcy Court's decision denying the Commonwealth's alternative motion for relief from the automatic stay was premised on the plainly *incorrect* conclusion that the enforcement action in Lawrence County did not constitute an exercise of the Commonwealth's "police and regulatory power" under § 362(b)(4).  ECF No. 143 at 2-3.  Even if the automatic stay did apply, the Bankruptcy Court's assumption that the Commonwealth had demonstrated only a "mere fear" that Americore "could misuse" the relevant charitable assets was based on a misunderstanding of Pennsylvania law.  ECF No. 143 at 3.  Either way, the Bankruptcy Court's decision denying the alternative motion for relief from the automatic stay on the basis of incorrect legal determinations constituted a *reversible* abuse of discretion.  *Mayor & City Council of Baltimore v. State of West Virginia (In re: Eagle-Picher Industries, Inc.)*, 285 F.3d 522, 529 (6th Cir. 2002).

## CONCLUSION

WHEREFORE, it is respectfully requested that the Bankruptcy Court's decision denying the Commonwealth's motion for a determination that the automatic stay does not apply to its enforcement action in Lawrence County [ECF No. 143] be **REVERSED**, thereby permitting that action to proceed immediately. In the alternative, the Commonwealth respectfully requests that this Court **REVERSE** the Bankruptcy Court's decision denying its motion for relief from the automatic stay and affirmatively **GRANT** the Commonwealth permission to proceed with the enforcement action pursuant to 11 U.S.C. § 362(d)(1).

February 26, 2020

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:   /s/ Anthony Thomas Kovalchick

ANTHONY THOMAS KOVALCHICK
Deputy Attorney General
Bar No. 89056 (Pa.)
akovalchick@attorneygeneral.gov
Admitted *Pro Hac Vice*

JASON L. SWARTLEY
Chief Deputy Attorney General
Financial Enforcement Section

Office of Attorney General
1251 Waterfront Place
Pittsburgh, PA 15222
Phone: (412) 565-2543

J. BART DELONE
Chief Deputy Attorney General
Appellate Litigation Section

26

## CERTIFICATE OF COMPLIANCE

In accordance with Federal Rule of Bankruptcy Procedure 8015(h), I hereby

certify that this brief contains 6,203 words.  In making this certificate, I have relied

on the word count feature of the word-processing system used to prepare the brief.

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:   /s/ Anthony Thomas Kovalchick
_____

ANTHONY THOMAS KOVALCHICK
Deputy Attorney General
Bar No. 89056 (Pa.)
akovalchick@attorneygeneral.gov
Admitted *Pro Hac Vice*

JASON L. SWARTLEY
Chief Deputy Attorney General
Financial Enforcement Section

Office of Attorney General          J. BART DELONE
1251 Waterfront Place               Chief Deputy Attorney General
Mezzanine Level                     Appellate Litigation Section
Pittsburgh, PA 15222
Phone: (412) 565-2543
akovalchick@attorneygeneral.gov

27

## CERTIFICATE OF SERVICE

In accordance with Federal Rule of Bankruptcy Procedure 8018(a)(1), I

hereby certify that copies of this brief have been electronically served on the

following counsel of record by means of the CM/ECF System:

**April A. Wimberg**
Dentons, Bingham Greenebaum Doll LLP-Louisville
101 S. Fifth Street
3500 PNC Tower
Louisville, KY 40202-3197
502-587-3695
Fax: 502-587-3695
Email: april.wimberg@dentons.com
Counsel for the Appellees

**Christopher B. Madden**
Dentons, Bingham Greenebaum Doll LLP-Louisville
101 S. Fifth Street
3500 PNC Tower
Louisville, KY 40202-3197
502-587-4200
Fax: 502-540-2270
Email: cmadden@bgdlegal.com
Counsel for the Appellees

**James R. Irving**
Dentons, Bingham Greenebaum Doll LLP-Louisville
101 S. Fifth Street
3500 PNC Tower
Louisville, KY 40202-3197
502-587-3606
Fax: 502-587-3695
Email: jirving@bgdlegal.com
Counsel for the Appellees

The following counsel of record (in the underlying bankruptcy case) are being separately served by email:

**Bradley M. Nerderman**
Trial Attorney
Office of the U.S. Trustee-KY
100 E. Vine Street
Suite 500
Lexington, KY 40507
859-233-2822
Bradley.Nerderman@usdoj.gov
Counsel for the U.S. Trustee

**John L. Daugherty**
Assistant U.S. Trustee
Office of the U.S. Trustee-KY
100 E. Vine St. #500
Lexington, KY 40507
859-233-2822
John.daugherty@usdoj.gov
Counsel for the U.S. Trustee

**Robert T. Razzano**
312 Walnut Street, Suite 3200
Cincinnati, OH 45202
513-929-3400
rrazzano@bakerlaw.com
Counsel for Chapter 11 Trustee Carol L. Fox

**Tiffany Payne Geyer**
Baker & Hostetler LLP
200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
407-649-4000
tpaynegeyer@bakerlaw.com
Counsel for Chapter 11 Trustee Carol L. Fox

**Elizabeth A. Green**
Baker & Hostetler LLP

200 S. Orange Avenue
Suite 2300
Orlando, FL 32801
407-649-4000
egreen@bakerlaw.com
Counsel for Chapter 11 Trustee Carol L. Fox

**Jimmy D. Parrish**
Baker & Hostetler LLP
200 S. Orange Ave.
Suite 2300
Orlando, FL 23801
407-649-4000
jparrish@bakerlaw.com
Counsel for Chapter 11 Trustee Carol L. Fox

**Robert O. Lampl**
223 Fourth Avenue, 4th Floor
Pittsburgh, PA 15222
412-392-0330
rlampl@lampllaw.com
Counsel for Grant White

**Gary M. Freedman**
2 South Buscayne Blvd., Suite 2100
Miami, FL 33131
305-373-9449
Gary.freedman@nelsonmullins.com
Counsel for the Official Committee of Unsecured Creditors

**Adam R. Kegley**
250 West Main Street
Suite 2800
Lexington, KY 40507-1742
859-231-0000
akegley@fbtlaw.com
Counsel for the Official Committee of Unsecured Creditors

**Michael D. Lessne**
100 S.E. 3rd Avenue, Suite 2700

30

Fort Lauderdale, FL 33394
954-745-5281
Michael.lessne@nelsonmullins.com
Counsel for the Official Committee of Unsecured Creditors

**Frank P. Terzo**
100 S.E. 3rd Avenue, Suite 2700
Ft. Lauderdale, FL 33394
954-745-5231
Frank.terzo@nelsonmullins.com
Counsel for the Official Committee of Unsecured Creditors

Chapter 11 Trustee Carol L. Fox is being served by regular mail:
**Carol L. Fox**
200 East Broward Blvd #1010
Fort Lauderdale, FL 33301
954-859-5075

Respectfully submitted,

JOSH SHAPIRO
Attorney General

By:  /s/ Anthony Thomas Kovalchick
_____

ANTHONY THOMAS KOVALCHICK
Deputy Attorney General
Bar No. 89056 (Pa.)
akovalchick@attorneygeneral.gov
Admitted *Pro Hac Vice*

JASON L. SWARTLEY
Chief Deputy Attorney General
Financial Enforcement Section

J. BART DELONE
Chief Deputy Attorney General
Appellate Litigation Section

Office of Attorney General

31

1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA 15222
Phone: (412) 565-2543
akovalchick@attorneygeneral.gov