UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

IN RE: AMERICORE HOLDINGS, )
LLC, *et al.* )
)
COMMONWEALTH OF ) No. 6:20-CV-29-REW
PENNSYLVANIA, )
) OPINION & ORDER
    Appellant, )
)
v. )
)
AMERICORE HOLDINGS, LLC, *et al.*, )
)
    Appellees. )

\*\*\* \*\*\* \*\*\* \*\*\*

The Commonwealth of Pennsylvania (Commonwealth) appeals the Bankruptcy Court's denial of its "motion for a determination that the automatic stay does not apply or, in the alternative, for relief from the automatic stay." DE 1 at 1; *In re Americore, et al.*, No. 19-61608-GRS, at E.C.F. No. 84 (Motion) & 143 (Order).[1] The matter is fully briefed. DE 6, 23, & 24.

The Court finds that the automatic stay properly applies and that Judge Schaaf did not abuse his discretion in denying relief from the stay.

    **I.**    **Factual Background and Procedural History**

Ellwood City Hospital (ECH, to include related entities) is located in Lawrence County, Pennsylvania, and operated as a non-profit, community-based hospital from 1910 to 2017. DE 7-2 ¶¶ 10 & 14. On March 6, 2017, ECH entered into an asset purchase agreement (APA) with Americore Health, LLC (Americore) and Ellwood Medical Center, LLC (EMC). DE 7-3, at 40.

---

[1] Hereinafter, citations to the bankruptcy proceedings underlying this appeal will be designated simply by E.C.F. No.

1

Under the APA, Americore and EMC acquired ECH's real estate, equipment, and receivables, and took over the operation of the former hospital. The transfer encompassed all or substantially all of ECH's assets. The APA required Americore and EMC to operate ECH as a licensed hospital and emergency room continuously for ten years. *Id.* at 19.

ECH's non-profit status and charitable history required court approval of the deal. On September 22, 2017, the parties obtained judicial approval of the proposed APA by the Court of Common Pleas of Lawrence County, Orphans' Court Division. DE 7-5. Following the implementation of the APA, the Pennsylvania Department of Health (DOH) cited ECH more than 40 times for non-compliance with statutory and regulatory obligations. DE 7-13, at 4. On November 27, 2019, the DOH performed an on-site investigation of ECH and then banned the facility from admitting patients and suspended its emergency department services. *Id.* at 8. The DOH provided five reasons for taking action: (1) "[t]he facility was not able to offer basic diagnostic services[,]" (2) "[t]he facility was suspending services due to low or no staff to offer the service[,]" (3) "[f]ailure to pay employees[,]" (4) "[t]he facility was not able to provide surgical services[,]" and (5) "[t]he facility failed to take appropriate steps regarding the transfer of patients, including failure to transfer in a safe manner." *Id.* Nonetheless, ECH remained licensed. *Id.* at 9. The hospital ceased operations on December 10, 2019. DE 7-10 ¶ 22.

On December 23, 2019, the Commonwealth filed a petition to enforce the APA and for monetary damages in the Orphans' Court, alleging that Americore and its affiliates had violated the APA, the Orphans' Court's earlier approving order, and various statutory and regulatory provisions requiring the timely payment of wages, unemployment contributions, and pension contributions. DE 7-3, at 2–15. On December 31, 2019, Americore filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District

of Kentucky. E.C.F. No. 1. On January 14, 2020, the Commonwealth filed an emergency motion for determination that the putative automatic stay of § 362 does not apply or, in the alternative, for relief from the automatic stay. DE 7-2. The Bankruptcy Court held a hearing on the motion on January 17, 2020. E.C.F. No. 119. The transcript of that hearing is in the record. *See* DE 23-1. On January 24, 2020, the Bankruptcy Court issued an Order denying the Commonwealth's motion. DE 1-2. Judge Schaaf rejected application of the § 362(b)(4) stay exception for a governmental unit's enforcement of "police and regulatory power" and also denied relief from the stay. *Id.* The Commonwealth timely filed its Notice of Appeal on February 3, 2020. E.C.F. 161; DE 1. After several agreed delays, the briefing closed in November 2020.

A few important notes about the situation on the ground, at the time of the Orphans' Court approval: First, the hospital was in the death throes. It had hemorrhaged cash for years ($4+ million annually "for a number of years") and had already lost $3.5 million by mid-2017. *See* DE 7-3 at 19–20 (Judge Acker Order, FF ¶ 6). The proof showed, and the Pennsylvania court found, that the hospital faced a true Hobson's choice—enter the Americore deal or liquidate immediately and entirely. *See id.* ¶ 8. Thus, while the Orphans' Court vetted and fortified the arrangement (by, *e.g.*, bolstering the escrow agreement and the local advisory board oversight provisions), the scaffolding was rickety and the foundation shallow in terms of assuring future operation of the hospital under the APA. The Court recognized that Americore was taking the assets free and clear of lien or encumbrance under a deal with few teeth in terms of warranted future performance. As Judge Hacker found, the APA "does not call for any lien or encumbrance or mortgage on any of the properties conditioned on Americore's performance of its obligations under the contract." *Id.* ¶ 13. Though the APA "contains provisions that contractually obligate Americore Health, LLC and Ellwood Medical Center, LLC to continue operations of a licensed hospital with a licensed

3

emergency room 24/7 365 days per year for a ten year period[,]" the agreement "transfers substantially all of the assets of the Ellwood City Hospital, without lien or encumbrance, immediately upon the consummation of the [APA] and before Americore Health, LLC and Ellwood Medical Center, LLC have performed their ten year obligation to keep the hospital emergency room open." DE 7-3 at 27 (Judge Acker Order, CL ¶ 8). Thus, the transfer of assets, and the Orphans' Court's approval of same, did not, it seems, hinge on future compliance.

The escrow agreement associated with the APA protected retirees, and the advisory board construction created process in terms of operational changes. DE 7-3, at 25 & 29–30. The Commonwealth stridently argues about the deal delivering healthcare, but Pennsylvania was at the table and did not object to the final formulation of the APA. The APA captures the resolution between the private entities involved, with the Court and Commonwealth fulfilling their advisory components regarding the underlying charitable nature of the transferring entity. The deal represents a pragmatic choice in light of real-world dynamics, in a situation where the hospital had no better moves. Importantly, the parties do not point to a divestiture component in the APA or Judge Acker's order. Indeed, the language strongly indicates no such remedy.

As for the Commonwealth's December 2019 suit, the Court has reviewed the pleading in full. The gravamen surely is one about money and financial obligations—the Petition asserts claims for wages, retirement contributions, and unemployment compensation contributions. DE 7-3. Even the APA breach count, the only count not tied wholly to a wage, benefit, or tax matter, cites Americore's breach as resulting in mass layoffs and unpaid wages. *Id.* ¶ 56. Thus, the Petition hardly focuses on the deprivation of healthcare in the area. The Commonwealth now casually waives away the direct financial aspects of the state court suit and characterizes the suit's focus

4

now on its goal of vindicating the APA, its protection of healthcare services in Lawrence County, and the charitable lineage of the underlying assets.

**II.     Analysis**

    A.   Jurisdiction and Standard of Review

The Court has jurisdiction to hear appeals "from final judgments, orders, and decrees" in bankruptcy cases. 28 U.S.C. § 158(a)(1). In the bankruptcy context, an order adjudicating a motion for relief from an automatic stay is a final, appealable order. *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 586 (2020). The parties are in accord.

The Bankruptcy Court's determination that the § 362(b)(4) exception does not apply here is a conclusion of law, and thus the Court will review it de novo. *See In re Behlke*, 358 F.3d 429, 433 (6th Cir. 2004) ("The bankruptcy court's findings of fact are reviewed for clear error, while its conclusions of law are reviewed de novo.") (citations omitted).

The Bankruptcy Court's decision to deny relief from the stay under 11 U.S.C. § 362(d)(1) is an "equitable determination[]" and is "reviewed for an abuse of discretion." *In re Eagle-Picher Indus., Inc.*, 285 F.3d 522, 527 (6th Cir. 2002) (citations omitted); *see also In re Garzoni*, 35 F. App'x 179, 181 (6th Cir. 2002) ("The decision whether or not to lift the automatic stay resides within the sound discretion of the bankruptcy court.") (citing *Laguna Assocs. Ltd. P'ship v. Aetna Cas. & Sur. Co.* (*In re Laguna Assocs., Ltd. P'ship*), 30 F.3d 734, 737 (6th Cir.1994)). "Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.*, 865 F.2d 789, 790 (6th Cir. 1989) (citing *Balani v. Immigration and Naturalization Service*, 669 F.2d 1157, 1160 (6th Cir.1982)).

B. Application

The Court considers two questions: (1) Did the Bankruptcy Court err in determining that the Commonwealth's action does not fall under the automatic stay exception "to enforce [the government's] police and regulatory power" under 11 U.S.C. § 362(b)(4)?; and (2) Did the Bankruptcy Court abuse its discretion in declining the Commonwealth's alternative request for relief from the automatic stay under 11 U.S.C. § 362(d)(1)?

*(i)  Automatic Stay Exception Under 11 U.S.C. § 362(b)(4)*

Under 11 U.S.C. § 362(a)(1), a bankruptcy petition operates as an automatic stay on legal actions against the debtor commenced before the filing of the petition. "The stay helps 'preserve what remains of the debtor's insolvent estate and . . . provide a systematic equitable liquidation procedure for all creditors, secured as well as unsecured, thereby preventing a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts.'" *Chao v. Hosp. Staffing Servs., Inc.*, 270 F.3d 374, 382–83 (6th Cir. 2001) (quoting *Holtkamp v. Littlefield*, 669 F.2d 505, 508 (7th Cir.1982)).

There are, however, numerous exceptions, including one under consideration here. Section 362(b)(4) excepts actions by a governmental unit[2] to enforce its "police or regulatory power." Sixth Circuit law nominally provides two tests to determine whether an action falls under the § 362(b)(4) exception: the pecuniary purpose test and the public policy test. *Chao*, 270 F.3d at 385. "It is well settled that '[e]xceptions to the stay should be read narrowly.'" *In re Dougherty-Kelsay*, 601 B.R. 426, 442 (Bankr. E.D. Ky. 2019) (quoting 3 Collier on Bankruptcy ¶ 362.05 (Alan R.

---

[2] The Bankruptcy Code defines "governmental unit" to mean "United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government." 11 U.S.C. § 101(27). The parties agree that the Commonwealth fits this definition.

6

Resnick & Henry J. Sommer eds., 16th ed. 2019)); *In re McMullen*, 386 F.3d 320, 325 (1st Cir. 2004) (noting, as proper, narrow construction of § 362(b)(4)). Narrow construction of exceptions to the stay is necessary to facilitate fair and equitable bankruptcy proceedings. *See Stieg v. Hanson (In re Stieg)*, 509 B.R. 148, 152 (Bankr. S.D. Ohio 2014) ("The exceptions to the automatic stay are narrowly construed to ensure fair and equal treatment among all creditors."). Illiberal interpretation also provides for the automatic stay to serve its purpose to make bankruptcy proceedings streamlined and manageable. *Chao*, 270 F.3d at 382–83.

"Under the pecuniary purpose test, reviewing courts focus on whether the governmental proceeding relates primarily to the protection of the government's pecuniary interest in the debtor[']s property, and not to matters of public safety. Those proceedings which relate primarily to matters of public safety are excepted from the stay." *In re Commerce Oil Co.*, 847 F.2d 291, 295 (6th Cir. 1988). This includes "the regulation of matters of health and safety." *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 117 S. Ct. 1747, 1751 (1997) (citing *Hillsborough County v. Automated Medical Laboratories, Inc.*, 105 S. Ct. 2371, 2376 (1985)). The Bankruptcy Court found that the Commonwealth did not pass the pecuniary purpose test, stating

> This is not a matter of public safety. The hospital is closed and there is no evidence that immediate harm may befall the residents at this time. Forcing the hospital to reopen and make payments of certain debts (e.g., payroll) would give the Attorney General and the creditors a pecuniary advantage inconsistent with the fair distribution concepts in the Bankruptcy Code. Further, the relief sought requires expending funds to operate the hospital or turnover of a valuable asset of the bankruptcy estate. This relief is pecuniary in nature.

DE 1-2 at 2.

"Under the public policy test, reviewing courts must distinguish between proceedings that adjudicate private rights and those that effectuate public policy. Those proceedings that effectuate a public policy are excepted from the stay." *In re Commerce Oil Co.*, 847 F.2d at 295 (citing

7

*N.L.R.B. v. Edward Cooper Painting, Inc.*, 804 F.2d 934, 942 (6th Cir. 1986)). The Bankruptcy Court found that the Commonwealth also did not meet the public policy test, stating

> The action also fails the public policy test. The request for enforcement of a contract or damages for its breach (by divestiture of the asset or money damages) is a request to adjudicate the private rights of the citizens of Lawrence County and not a matter of public policy.

DE 1-2 at 3. The Commonwealth argues that the Bankruptcy Court, in referring to "the private rights of the citizens of Lawrence County[,]" improperly narrows the concept of public policy. DE 6 at 25. In the Commonwealth's view, the enforcement action "is actually seeking to vindicate 'the public interest in a charitable trust rather than [private interests held by] a particular class of beneficiaries[.]." *Id.* at 28 (citing *In re Estate of Thompson*, 206 A.2d 21, 27 (Pa. 1965)).

In this de novo review context, the Court determines that the stay properly persists.[3] While the parties somewhat rigidly segregate the analysis between distinct tests, in truth, the Sixth Circuit views the analysis as a complementary, indeed integrated, inquiry into whether the legal action assessed is actually a government's enforcement of excepted regulatory or police power or instead an action primarily protective of the government's financial interests or adjudicative of private parties' rights. As the Court in *Chao* characterized:

> This is true because, in fashioning § 362(b)(4), Congress did not except from the automatic stay all lawsuits undertaken by appropriate governmental authorities; it expressly limited the exception to suits by a governmental unit "to enforce such governmental unit's police and regulatory power." **This court's pecuniary interest and public policy tests recognize this limitation and are designed to sort out cases in which the government is bringing**

---

[3] The Court agrees that Judge Schaaf perhaps too restrictively articulated the police power scope. Certainly, the stay exception extends well-beyond immediate public safety. Courts have found valid police power or regulatory application in contexts involving "health, welfare, morals, and safety." *Chao*, 270 F.3d at 386. That has included laws targeting environmental protection, discrimination, consumer protection, Medicare solvency, and labor. *See, e.g.,* Governmental, police, or regulatory power (Code § 362(b)(4)), 2 Norton Bankr. L. & Prac. 3d § 43:19 (compiling exemplar actions). However, Judge Schaaf was evaluating only the interests placed before him, and, in the parlance of the cases, which often cite the police power as synonymous with safety, he was probing in a targeted way for the focus of the action—pecuniary interest or public safety (police power).

> **suit in furtherance of *either* its own or certain private parties' interest in obtaining a pecuniary advantage over other creditors**.

270 F.3d at 389 (emphasis added); *id.* at ("As the district court aptly put it, '[p]ursuant to these complementary tests, an **action will only be exempt from the automatic stay of the Bankruptcy Code if the action has been instituted to effectuate the public policy goals of the governmental entity, as opposed to actions instituted to protect the entity's pecuniary interest in the debtor's property or to adjudicate private rights**.'") (emphasis added); *see also In re Leonard*, 644 F. App'x 612, 615–16 (6th Cir. 2016) (summarizing query: "We have held that government action is exempt from the stay if designed to effectuate public-policy goals, rather than to protect a pecuniary interest in the debtor's property or adjudicate private rights.").

> *Chao* recognized the difficulties in application, and counselled:

> Applying this test is a difficult undertaking, and many cases will be close. . . . Accordingly, courts should examine the type of enforcement action brought and the relationship between a particular suit and Congress's (or a state's) declared public policy. When an action furthers both public and private interests and the private interests do not significantly outweigh the public benefit from enforcement, courts should defer to the legislature's decision to vest enforcement authority in the executive and recognize such actions as within "such governmental unit's police and regulatory power," as that term is used in § 362(b)(4). However, when the action incidentally serves public interests but more substantially adjudicates private rights, courts should regard the suit as outside the police power exception, particularly when a successful suit would result in a pecuniary advantage to certain private parties vis-a-vis other creditors of the estate, contrary to the Bankruptcy Code's priorities.

270 F.3d at 389-90. So, the Court carefully scrutinizes the type of action before it and the relationship between the suit and the public policy propounded by the Commonwealth. The Commonwealth styled the action as a "Petition to enforce asset purchase agreement and monetary damages." DE 7-3, at 2. As noted before, and as Judge Schaaf perceived, the central focus of the state court proceeding is pecuniary. All counts but one directly seek a monetary award—for wages, for pension contributions, and for unemployment compensation contributions. *See id.* at 11–14.

9

The first count seeks to enforce the APA, but the key breach-based assertion within that count relates to hospital employees: "The Defendants' breach resulted in mass employee layoffs and employee wages being owed." *Id.* ¶ 56. The Commonwealth, citing the pre-petition timing, seeks to minimize the fiscal focus and asserts deference to the Bankruptcy Court on financial priorities. However, the remedy sought before the Pennsylvania court would either force reopening of the hospital (with attendant financial implications) or would divest Americore (and the estate) of the assets already freely and fully transferred under the APA. *See id.* at 14 (Prayer for Relief ¶¶ 3–4).

The Commonwealth clings to two motivating police or regulatory goals—ensuring access to health services in the Ellwood City area and guarding proper use of charitable assets. *See* DE 24, at 8. The Court does not deny that healthcare scarcity, surely worsened by a local hospital closure, is a matter of public interest. Further, guarding societal values in the proper disposition of non-profit or charitable assets is a proper matter of state oversight in the *parens patriae* role. However, in the context of this suit and this case, the Court finds the stay exception inapplicable.

First, as the shutdown and bankruptcy filing well-reflect, the hospital is not an operational entity. Thus, the Commonwealth is not functionally attempting to regulate activity or effect compliance with an established healthcare or welfare standard. The Court sees significant attenuation between the filed action and the provision or availability of health services. ECH, at the time of the APA, faced immediate closure. Americore, the only suiter with a forward-looking position, offered the lone chance to avoid prompt, sure liquidation. Thus, 3+ years later, with Americore in bankruptcy, the situation is not nearly as simple as the Commonwealth interceding, taking over, and reopening the hospital's doors to serve the locality. The Pennsylvania suit, in fact, does not mention health-service provision as a motivation or catalyst; the lawsuit's gravamen is employer or entity financial obligations, not healthcare delivery.

Second, the Commonwealth has already had its say on charitable asset disposition in this context. The APA, an agreement between the prior hospital entities and the Americore entities, went through the full judicial review process. The Attorney General participated and consented to the deal. That deal placed the non-profit organization's assets into the hands of Americore immediately, free and clear of all liens—the "[APA] does not call for any lien or encumbrance or mortgage on any of the properties conditioned on Americore's performance of its obligations under the contract." DE 7-3, at 21 (FF ¶ 13); *id.* at 27 (CL ¶ 8) (recognizing immediacy of transfer, without lien or encumbrance, before Americore had completed its 10-year operational obligations under the APA). As Judge Acker expressly noted, the transfer was not conditioned on Americore's performance. Although the state order recognizes that Pennsylvania would retain standing to sue under the APA, that is not the same as saying that the Commonwealth, having participated in the prior adjudication, can reopen the calculus and displace the approved APA.

The Sixth Circuit recognizes that economic control over the bankruptcy res is quintessentially a matter implicating pecuniary interests rather than police power. The Sixth Circuit in *Chao*, 270 F.3d at 386, cited favorably to *State of Mo. v. U.S. Bankr. Court for E. D. of Arkansas*, 647 F.2d 768, 776 (8th Cir. 1981). That case dealt with Missouri's effort to control the disposition of grain held by an insolvent grain elevator company. Missouri had a law requiring state control in that context. The Eighth Circuit rejected a stay exception:

> We conclude that Missouri's grain laws, although regulatory in nature, primarily relate to the protection of the pecuniary interest in the debtors' property and not to matters of public safety and health. Missouri's laws, by governing the operation and liquidation of grain warehouses, directly conflict with the control of the property by the bankruptcy court and, therefore, do not fall within the section 362(b)(4) exception.

*Id.* at 776; *see also In re Commonwealth Companies, Inc.*, 913 F.2d 518, 524 (8th Cir. 1990) (discussing the principle and stating: "[O]ur holding in *Missouri v. Bankruptcy Court,* 647 F.2d at

11

775–76, resolved this problem by classifying an action to protect a 'pecuniary interest' in property of the debtor or of the estate as one which directly conflicts with the bankruptcy court's control of that property, perhaps the clearest example of an action resulting in a pecuniary advantage over other creditors.").[4]

What Pennsylvania seeks is state court control over "what happens next" with the Americore assets. *See* DE 23-1 at 16 (Hearing Trans. 14:6, 20–22) (arguing for Pennsylvania control over "where would the assets be distributed?"). Given the nature of the APA, and the state court's findings with respect to its operation, this strikes the Court as in direct conflict with the proper and ordered role of the Bankruptcy Court, which has primacy over Americore's bankruptcy estate, an estate that includes the first "A" of the APA.

Finally, relief here would allow provincial adjudication of the APA parties' private rights with only incidental public benefit. It is true that Pennsylvania's protective role played a part in, or placed a gloss on, the APA, and the Orphans' Court imposed procedural revisions as part of its oversight. However, the APA ultimately is a contract between private entities, and the Commonwealth's suit seeks to enforce that negotiated agreement. Given the significant references to entirely pecuniary concerns (employee compensation and pension contributions) and to governmental payments (unemployment compensation contributions), and given the details of the APA and the Orphans' Court order, this Court finds that the state primarily seeks to adjudicate

---

[4] Certainly, existence of res control does not conclude the analysis. *See In re Javens*, 107 F.3d 359, 370 (6th Cir. 1997). However, the Court views a regulatory effect on property as distinct from the economic prioritization reflected in a case like *Missouri v. Bankruptcy Court*. *See Chao*, 270 F.3d at 389 (post-*Javens*, again citing *Missouri v. Bankruptcy Court* as properly forming the inquiry into whether "the government is bringing suit in furtherance of *either* its own or certain private parties' interest in obtaining a pecuniary advantage over other creditors").

private interests[5] or validate government concerns[6] that do not, in this setting, properly fall within the police or regulatory power carved out by § 362(b)(4). Per *Chao*, the test can be arduous and the results close, but Judge Schaaf did not err when he declined to apply the stay exception.

### (ii) Relief from Automatic Stay Under 11 U.S.C. § 362(d)(1)

In the alternative, the Commonwealth argues that the Bankruptcy Court abused its discretion by denying Pennsylvania's request for relief from the automatic stay under 11 U.S.C. § 362(d)(1). DE 6 at 30. Section 362(d)(1) provides that a court may grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest[.]" The Bankruptcy Code does not define what constitutes "cause" in this context, and thus the "courts must determine whether discretionary relief is appropriate on a case-by-case basis." *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 737 (6th Cir. 1994) (citing *In re Zick*, 931 F.2d 1124, 1129 (6th Cir.1991)). The Bankruptcy Court has a wide berth to determine whether "cause" exists. Cause factors include "1) judicial economy; 2) trial readiness; 3) the resolution of

---

[5] This is in the same vein as *Missouri v. Bankruptcy Court*, where the state tried to insert itself into the prioritization of payment to competing grain producers. Here, the state literally is seeking to litigate as *parens patriae* (though not as an actual party) in an effort to control the distribution of Americore's assets, insofar as they trace to the Ellwood City transaction. This seems very close to *Chao*'s hypothetical of the government carrying a private party's banner:

> An extreme example of such would be a suit by a state attorney general on behalf of a supplier against its debtor-customer to enforce a contract obligation. Although the suit would effectuate the state's public policy in favor of enforcing contractual obligations or requiring payment of damages, the suit essentially enforces the supplier's private rights against the debtor and would result in a pecuniary advantage to the state-favored supplier vis-a-vis other creditors of the debtor's estate.

*Chao*, 270 F.3d at 389. Pennsylvania, interested in fostering the general value of guarding charitable origins, would primarily be pressing the private contractual rights, under the APA, of Americore's ECH predecessors.

[6] Concededly, the government does not have a precise pecuniary interest, like an executory contract to which it is a party. The state complaint does, though, include the unemployment compensation theory, and in its arguments here, Pennsylvania alludes to the drain on local government resources, like police, caused by more remote medical care. These elements muddy the waters on the pecuniary nature of the Commonwealth's pursuit.

preliminary bankruptcy issues; 4) the creditor's chance of success on the merits; and 5) the cost of defense or other potential burden to the bankruptcy estate and the impact of the litigation on other creditors." *In re Garzoni*, 35 F. App'x 179, 181 (6th Cir. 2002).

The Commonwealth argues that the Bankruptcy Court improperly premised its denial of the request for relief on "incorrect legal determinations" regarding the § 362(b)(4) stay exception and the risk of misuse of charitable assets. DE 6 at 31. The Court disagrees and finds no abuse of discretion.

As to the misuse of charitable assets, the Bankruptcy Court determined that the Commonwealth demonstrated only "a mere fear that [Americore] could misuse the assets." E.C.F. No. 143 at 3. The Commonwealth argues that, in fact, Americore misused charitable assets by halting the operations of ECH, in violation of the APA and the Orphans' Court's September 2017 order. DE 6 at 30. This argument simply begs the question on the merits of the APA breach, and Judge Schaaf expressed doubt about endeavoring to undo the prior deal outside the context of bankruptcy. DE 23-1 at 13 (Hearing Trans. 11:5–10). The Bankruptcy Court recognized that it could control Americore's assets and prevent unauthorized transfers or dissipation prospectively as part of its oversight, a truism that rationally supports the declination of relief. The Bankruptcy Court further addressed the relevant considerations, including the damage to judicial economy that would result from parallel bankruptcy and state court proceedings, *id.* at 21 (Hearing Trans. 19:12–18), and the harm to other creditors and interested parties if the state court case were permitted to proceed. *Id.* at 42 (Hearing Trans. 40:14–18).

The Bankruptcy Court's order and the hearing transcript show that Judge Schaaf carefully considered the relevant law and the policy concerns underlying the automatic stay, and the

14

exceptions to it.[7] The judge engaged in an extensive colloquy with all sides and heard each of the Commonwealth's arguments. He extended appropriate process and ensured the Bankruptcy Court's ability to protect Pennsylvania's interests within the context of the bankruptcy system. He also noted concerns about the timing of the request and entered a decision without prejudice, sparing the Commonwealth's option to return on subsequent developments. *See id.* at 43–44 (Hearing Trans. 41:24–42:3) ("[I]t's simply premature to give you the relief that you're requesting, and that's why . . . I don't think it precludes you from requesting similar relief at a later point in the case when the facts have changed."). To the Court's knowledge, that has not occurred. The Bankruptcy Court did not abuse its discretion in denying the Commonwealth's motion for relief from the automatic stay under § 362(d)(1).

### III.    Conclusion

For the reasons stated, the Court finds no error in the disposition of the Bankruptcy Court. Accordingly, the Court **ORDERS** as follows:

1. The Bankruptcy Court's ruling is **AFFIRMED**; and
2. The Court **DIRECTS** the Clerk to **STRIKE** this matter from the Court's active docket.

This the 10th day of February, 2021.



Signed By:
*Robert E. Wier*   REW
United States District Judge

---

[7] *See*, *e.g.*, DE 23-1 at 40 (Hearing Trans. 40:11–14) ("The grant of stay relief is much more difficult. I believe – I'm going to take this under submission, take a look again at the cases to make sure that I have this down correctly because this is quick.").